UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLON CASTILLO ESPADA,<br><br>Petitioner,<br><br>v.<br><br>JOHN DOE, Warden, et al.,<br><br>Respondents. | Case No. 5:25-cv-02983-JWH-KES<br><br>FINAL REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |

This Final Report and Recommendation ("R&R") is submitted to the Honorable John W. Holcomb, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.   INTRODUCTION

Marlon Castillo Espada ("Petitioner") filed this habeas action under 28 U.S.C. § 2241 in November 2025.  Petitioner was ordered removed from the United States to 2013, but he was released on an order of supervision ("OSUP") when the government could not remove him.  In October 2025, his OSUP was revoked, he was re-detained by U.S. Immigration and Customs Enforcement

("ICE").  He remains in ICE custody.

This R&R recommends granting his Petition and releasing Petitioner, subject to the conditions of his prior OSUP.  Although the Court previously denied Petitioner's request for a temporary restraining order ("TRO"), the record has materially changed at this stage of the litigation.  Respondents failed to file any response to the underlying Petition after being ordered to do so, and they failed to appear at a hearing before the Magistrate Judge on January 9, 2026.  As discussed further below, because Petitioner was previously released under an OSUP, his detention is governed not by Zadvydas v. Davis, 533 U.S. 678 (2001) but rather by Department of Homeland Security ("DHS") regulation 8 C.F.R. § 241.13.  That regulation places the burden on Respondents to show that changed circumstances have rendered Petitioner's removal significantly likely in the reasonably foreseeable future.  Respondents have failed to meet that burden.  To the contrary, the conviction that made Petitioner removable has been overturned.  At the status conference on January 9, 2026, Petitioner's counsel represented that he expects Petitioner's legal resident status to be reinstated eventually.

This Final R&R is issued to address the objections Respondents filed to the initial R&R (Dkt. 20).  These objections do not change the undersigned's recommendation, as explained further below.

## II.    PROCEDURAL HISTORY

On November 6, 2025, Petitioner filed a counseled petition for writ of habeas corpus under § 2241.  ("Petition" at Dkt. 1.)  The Petition argues that Petitioner's removal is not reasonably foreseeable, which means his detention violates his due process rights under Zadvydas v. Davis, 533 U.S. 678 (2001) and also violates 8 U.S.C. § 1231(a).

On November 10, 2025, the Court issued a scheduling order requiring, inter alia, Petitioner to apply for a TRO within three days.  (Dkt. 4 at 2 ¶ 4.)  Petitioner timely applied for a TRO on November 13, 2025.  (Dkt. 6.)  Respondents opposed

2

the TRO (Dkt. 8) with a supporting declaration from Deportation Officer Enrique Chavez dated November 17, 2025 (Dkt. 8-1).  Petitioner did not file a reply.

On November 19, 2025, the Court[1] held a hearing on the TRO application. (Dkt. 10.)  The Court continued the hearing to December 19, 2025 and directed Respondents to file a status report on or before December 12, 2025 "that advises the Court regarding their efforts to obtain travel documents and to effectuate Petitioner's removal."  (Id.)  The Court also allowed either party to file a supplemental brief by December 17, 2025 at the latest.  (Id.)

On December 12, 2025, Respondents filed a status report which stated, "At this time, Respondents have no updates or additional information to report."  (Dkt. 12 at 2.)  On December 17, 2025, Petitioner filed a supplemental brief (Dkt. 13), which attached a declaration from counsel representing Petitioner in his removal case, Kiran Nair (Dkt. 13-1).  On December 19, 2025, the Court denied the TRO without prejudice for reasons stated orally on the record.  (Dkt. 14.)

On December 23, 2025, the Court issued a scheduling order requiring Respondents to respond to the Petition within 14 days, i.e., by January 6, 2026. (Dkt. 15 at 4 ¶ 2.)  Respondents failed to timely respond.

On January 7, 2026, the Court issued an order noting Respondents' failure to respond to the Petition and setting a telephonic status conference for January 9, 2026.  (Dkt. 16.)  The Court noted that if Respondents filed a response to the Petition prior to the status conference, it might take the status conference off calendar.  (Id.)  Respondents did not file anything in response to this order.  The

---

[1] Under General Order 05-07, this case is referred to the undersigned Magistrate Judge to consider preliminary matters and prepare a report and recommendation regarding the disposition of the case.  (Dkt. 3.)  However, applications or motions seeking injunctive relief may not be referred to a magistrate judge.  See 28 U.S.C. § 636(b)(1)(A); General Order 05-07, https://www.cacd.uscourts.gov/sites/default/files/general-orders/GO-05-07.pdf. Accordingly, the District Judge ruled on the TRO application.

Court held the status conference on January 9, 2026, and Respondents failed to appear.

## III.   EVIDENCE IN THE RECORD[2]

Petitioner is a Bolivian national who entered the U.S. as a lawful permanent resident on or around June 25, 1989.  (Pet. at 1 ¶ 1; Chavez Decl. ¶ 4 / Dkt. 8-1 at 1.)  On September 4, 2009, he was convicted of assault with a semi-automatic firearm under California Penal Code § 245(b) and sentenced to one year in state prison.  (Pet. at 1 ¶ 2; Chavez Decl. ¶ 5 / Dkt. 8-1 at 1-2.)

On February 28, 2011, ICE took the Petitioner into custody and issued a Notice to Appear charging removability under Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act.  (Chavez Decl. ¶ 6 / Dkt. 8-1 at 2.)  That section provides that a noncitizen "who is convicted of an aggravated felony at any time after admission is deportable."  18 U.S.C. § 1227(a)(2)(A)(iii).

On May 9, 2011, an immigration judge ("IJ") in Los Angeles, CA ordered Petitioner removed to Bolivia.  (Chavez Decl. ¶ 7 / Dkt. 8-1 at 2.)  On October 28, 2011, the Board of Immigration Appeals ("BIA") dismissed Petitioner's appeal but remanded the case to the IJ to allow Petitioner to apply for removal protection

---

[2] The Petition is verified by Petitioner's counsel rather than Petitioner himself.  (Pet. at 8.)  Some courts in this district have allowed this practice where the petitioner is in custody.  See, e.g., Luu v. Bowen, No. 25-cv-03145-MEMF-SP, 2025 WL 3552298, at *4, 2025 U.S. Dist. LEXIS 257061, at *11 (C.D. Cal. Dec. 11, 2025) ("Luu's counsel verifying the Petition, Estalyn Marquis, has spoken with Luu, … where she got the information for the Petition and thus has personal knowledge.  And the assertions in the Petition can be taken as true because Luu's counsel swore that based on what she has learned from the information, the Petition is true.  Therefore, there is 'competent sworn testimony' to satisfy the verification requirements under Local Rule 83-16.2.").  Regardless, the material factual allegations are corroborated by Officer Chavez's declaration, which Respondents filed in support of their opposition to the TRO application.  (Dkt. 8-1.)  The declaration from Petitioner's immigration counsel, Kiran Nair, is properly made based on personal knowledge.

relief.  (Chavez Decl. ¶ 9 / Dkt. 8-1 at 2.)  On January 3, 2013, the IJ granted Petitioner deferral of removal under Article III of the Convention Against Torture ("CAT").  (Chavez Decl. ¶ 10 / Dkt. 8-1 at 2.)  On January 9, 2013, Petitioner was released from ICE custody on an OSUP.  (Chavez Decl. ¶ 11 / Dkt. 8-1 at 2.)

The Petition alleges that Petitioner has been living in the U.S. since then and regularly checking in with ICE.  (Pet. at 2 ¶ 4.)  He has four U.S. citizen children. (Id. at 4 ¶ 19.)

In May 2014 and October 2022, Petitioner was convicted of driving under the influence ("DUI") and sentenced to serve 60 and 45 days in jail, respectively. (Chavez Decl. ¶¶ 12-13 / Dkt. 8-1 at 2-3.)

On October 23, 2025, Petitioner was re-detained by ICE.  (Pet. at 2-3 ¶¶ 6, 18; Chavez Decl. ¶ 14 / Dkt. 8-1 at 3).)  According to Officer Chavez, "On the same day, [he] was served a Notice of Revocation of Release."  (Chavez Decl. ¶ 14 / Dkt. 8-1 at 3.)  Officer Chavez's declaration does not attach a copy of this notice or summarize its contents, so there is no evidence as to why Petitioner's OSUP was revoked.  Petitioner remains detained at the Adelanto Detention Center in Adelanto, California.  (Pet. at 2 ¶ 8; Chavez Decl. ¶ 14 / Dkt. 8-1 at 3.)

On November 14, 2025, Petitioner "successfully obtained post-conviction relief of his 2009 conviction of Cal. Pen. Code § 245(b)," i.e., the conviction that was the basis for his removal order, under California Penal Code § 1473.7(a)(1). (Nair Decl. ¶ 4 / Dkt. 13-1 at 1); see generally Cal. Pen. Code § 1437.7(a)(1) ( "A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence" arguing that the "conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence.").

Petitioner has moved the BIA to reopen his immigration case and reinstate his permanent resident status based on the vacation of this conviction.  (Nair Decl.

¶ 7 / Dkt. 13-1 at 2.) "[T]he BIA does not have a timeline for when the motion will be ruled on." (Nair Decl. ¶ 8 / Dkt. 13-1 at 3.)[3]

As of November 17, 2025, ICE had "initiated the process of requesting travel documents" from unspecified third countries. (Chavez Decl. ¶ 15 / Dkt. 8-1 at 3.) "ICE does not anticipate any obstacles to removal once travel documents are issued." (Chavez Decl. ¶¶ 15-16 / Dkt. 8-1 at 3.) There is no evidence of what countries ICE or DHS have applied to or how long the process typically takes.

## IV.    DISCUSSION

### A.    DHS Regulation 8 C.F.R. § 241.13(i), Not *Zadvydas*, Governs Petitioner's Claims.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court held that 8 U.S.C. § 1231(a)(6) does not authorize the government to detain an alien awaiting removal "indefinitely" beyond the statutory 90-day removal period. 533 U.S. at 689. The Supreme Court construed the statute to contain an implicit "reasonable time" limitation. Id. at 682. The Court held that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Id. at 682, 689. The Court determined that six months was a presumptively reasonable period of detention. Id. at 701. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id. If the government fails to rebut the alien's showing, then the alien is entitled to relief. See e.g., Chun Yat Ma v. Asher, No. 11-cv-1797, 2012 WL 1432229, 2012 U.S. Dist. LEXIS 58082 (W.D.

---

[3] At the hearing on January 9, 2026, at which Respondents failed to appear, Petitioner's counsel stated that, in his experience, it may take the BIA anywhere from 6 months to 3 years to adjudicate this type of motion.

Wash. Apr. 25, 2012) (granting habeas relief and ordering petitioner released from custody after eleven-month delay in removing petitioner to China). The Supreme Court noted, "For detention to remain reasonable, as the period or prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Zadvydas, 533 U.S. at 701.

Both parties in this case appear to assume that Zadvydas is the governing standard for Petitioner's claim. However, "This case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in Zadvydas. This case is about ICE's authority to *re-detain* [the petitioner] after he was issued a final order of removal, detained, and subsequently released on an OSUP. The DHS regulation, 8 C.F.R. § 241.13(i), applies to non-citizens in [this] situation." Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); see also Luu v. Bowen, No. 25-cv-3145-MEMF-SP, 2025 WL 3552298, at *6, 2025 U.S. Dist. LEXIS 257061, at *16 (C.D. Cal. Dec. 11, 2025) (holding that where a petitioner has been re-detained, "Section 241.13 actually codifies how Zadvydas should apply").

Here, Respondents assert that Petitioner has a final order of removal, was detained, and then was released on an OSUP. (Chavez Decl. ¶¶ 9-11 / Dkt. 8-1 at 2.) Accordingly, Respondents were required to comply with 8 C.F.R. § 241.13(i) when they revoked Petitioner's OSUP and re-detained him in October 2025.

**B.** **Respondents Have Not Shown Changed Circumstances Demonstrating A Significant Likelihood that Petitioner May Be Removed in the Reasonably Foreseeable Future Under 8 C.F.R. § 241.13(i)(2).**

Section 241.13(i) allows DHS to revoke a noncitizen's OSUP and re-detain them if they violate any of the conditions of release, 8 C.F.R. § 241.13(i)(1), or "if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future," 8

C.F.R. § 241.13(i)(2); see also Hoang v. Santa Cruz, No. 25-cv-2766-JGB-JC, 2025 WL 3141857, at *3, 2025 U.S. Dist. LEXIS 212737, at *9 (C.D. Cal. Oct. 28, 2025) ("[I]f a noncitizen is subject to 8 C.F.R. § 241.13, ICE may only detain them under more limited circumstances than 8 C.F.R. § 241.4(*l*)….").

The regulation requires that the noncitizen be (a) "notified of the reasons for revocation of his or her release," and (b) given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. § 241.13(i)(3); see also Nouri v. Herrera, No. 25-cv-1905-JFW-DTB, 2025 U.S. Dist. LEXIS 171809, at *13 (C.D. Cal. Sep. 3, 2025) ("ICE's regulations require that when an alien is notified of a revocation of release, the 'reasons' for that revocation must be stated in the notification.").

In the present case, the Petition alleged that Petitioner "was detained … for imminent removal to a third country."  (Pet. at 2 ¶ 6.)  Respondents' opposition to the TRO application—the only written briefing Respondents have filed in this case, apart from a brief status report—did not dispute this contention.  The TRO opposition noted, "ICE is actively attempting to enforce Petitioner's removal and has initiated the process of requesting travel documents from [undisclosed] third countries."  (Dkt. 8 at 2.)[4]

---

[4] The opposition also noted that, in 2014 and 2022, Petitioner was convicted of DUI and sentenced to brief periods in state custody.  (Dkt. 8 at 2; Chavez Decl. ¶¶ 12-13 / Dkt. 8-1 at 2-3.)  However, neither Respondents' opposition nor Chavez's declaration asserted that Petitioner's OSUP was revoked because these convictions violated the terms of the OSUP.  As noted above, they did not provide a copy of the OSUP or the notice of revocation.  The Court assumes that Respondents did not revoke Petitioner's OSUP on this ground, since he remained out of custody between 2022 and 2025.  If Respondents sought to revoke the OSUP on this ground, they would need to give Petitioner written notice that this was the reason and an opportunity to respond.  Compare Pogosyan v. Bondi, No. 5:25-cv-03121-SRM-AS, 2025 WL 3898485, at *5, 2025 U.S. Dist. LEXIS 269696, at *14-15 (C.D. Cal. Dec. 3, 2025) (partially denying TRO application,

Section 241.13(i)(2) provides, "The Service may revoke an alien's release … and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Thus, the regulation "requir[es] (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." Nguyen, 788 F. Supp. 3d at 150 (quoting Kong v. United States, 62 F.4th 608, 619-20 (1st Cir. 2023)).

"[T]he burden-shifting framework from Zadvydas does not apply" where the petitioner has already been "issued a final order of removal, detained, and subsequently released on an" OSUP. Yan-Ling X. v. Lyons, No. 25-cv-01412-KES-CDB-HC, 2025 WL 3123793, at *3, 2025 U.S. Dist. LEXIS 220277, at *8 (E.D. Cal. Nov. 7, 2025). Under section 241.13(i)(2), "when ICE revokes release to effectual removal, 'it is *[ICE's] burden* to show a significant likelihood that the alien may be removed," because "imposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications.'" 2025 WL 3123793, at *4, 2025 U.S. Dist. LEXIS 220277, at *8 (emphasis added; quoting Escalante v. Noem, No. 25-cv-182, 2025 WL 2206113, at *3, 2025 U.S. Dist. LEXIS 148899, at *7 (E.D. Tex. Aug. 2, 2025)); see also Nazarian v. Noem, No. 25-cv-02694-KK-ADS, 2025 WL 3236209, at *5, 2025 U.S. Dist. LEXIS 229051, at *10-11 (C.D. Cal. Nov. 3, 2025) ("Contrary to Respondents' assertions, Petitioner is not challenging his detention during an initial removal period. See, e.g., Zadvydas, 533 U.S. at 701…. Rather, because Petitioner

finding, based on copy of notice of revocation submitted by respondents, that "ICE revoked Petitioner's release under Section 241.13(i)(1) as the Notice states that her release was revoked based of her felony convictions from 2014 and 2019, which violated a condition of her release"). Given that the state court has now vacated the conviction that led to Petitioner's removal order, this may be a moot point.

9

challenges his re-detention after already being released on an OSUP, 'ICE's own regulations [ ] place the burden on ICE to show changed circumstances that make removal significantly likely in the reasonably foreseeable future.'") (quoting Sun v. Noem, No. 25-cv-2433, 2025 WL 2800037, at *2, 2025 U.S. Dist. LEXIS 193795 (S.D. Cal. Sept. 30, 2025)); El Abed v. Noem, No. 25-cv-02361-FWS-JDE, 2025 WL 3691910, at *4, 2025 U.S. Dist. LEXIS 263943, at *11-12 (C.D. Cal. Oct. 28, 2025) ("Respondents have the burden to establish changed circumstances that make removal significantly likely in the reasonably foreseeable future and have not done so.").

"The plain language of the regulation … does not allow a court in the first instance to make the required individualized finding.  To the extent ICE claims that it made such a determination, the court should review that claim in light of the regulations instructing ICE on how it should make such a determination."  Nguyen, 788 F. Supp. 3d at 150 (quoting Kong, 62 F.4th at 620); see also Manivong, 2025 WL 3211455, at *5, 2025 U.S. Dist. LEXIS 171812, at *13 (same); Hoac v. Becerra, No. 25-cv-01740, 2025 WL 1993771, at *3, 2025 U.S. Dist. LEXIS 136002, at *6-7 (E.D. Cal. July 16, 2025) (same).  Section 241.13(f) states that DHS should consider the following facts:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.

8 C.F.R. § 241.13(f).

Respondents have not demonstrated changed circumstances sufficient to meet the burden imposed by their own regulations.  They have not produced a copy

10

of the notice of revocation served on Petitioner, which is supposed to explain what changed circumstances prompted the revocation. Respondents admit that Petitioner is not removable to Bolivia, his country of origin, because the immigration courts granted him protection against removal under the Convention Against Torture. Respondents have never identified any third country that is willing to accept Petitioner. They also have not identified any "changed circumstances" that would make it more likely that now—as opposed to in 2013—Petitioner will be removed to any third country.

As of November 17, 2025, ICE had "initiated the process of requesting travel documents from third countries," and Respondents state that they do "not anticipate any obstacles to removal *once travel documents are issued*." (Chavez Decl. ¶¶ 15-16 / Dkt. 8-1 at 3 (emphasis added).) Courts have found vague allegations such as this insufficient to meet Respondents' burden under section 241.13(i)(2). See, e.g., Azzo v. Noem, No. 3:25-cv-03122, 2025 WL 3535208, at *4, 2025 U.S. Dist. LEXIS 256030, at *12 (S.D. Cal. Dec. 10, 2025) ("Respondents have not even identified a third country to which they plan to remove Petitioner, much less submitted a travel document or provided an estimate for how long it would take this unidentified third country to respond."); Sun, 2025 WL 2800037, at *2, 2025 U.S. Dist. LEXIS 193795, at *6-7 ("The only argument Respondents now make for changed circumstances is that they are *preparing* to apply for the necessary documents to remove Petitioner to Cambodia. Respondents say they are 'putting together a travel document [TD] request to send to [the] Cambodian embassy,' … and that '[o]nce ICE receives the TD, it will begin efforts to secure a flight itinerary for Petitioner.' … The Court finds these kind[s] of vague assertions—akin to promising the check is in the mail—insufficient to meet ICE's own requirement to show 'changed circumstances' or 'a significant likelihood that the alien may be removed in the reasonably foreseeable future.'"); Nguyen, 788 F. Supp. 3d at 152 ("Respondents argue that ICE is

currently processing a travel document for Mr. Nguyen to return to Vietnam and that the United States has not received said travel document.  Again, Respondents have provided scant information to support its determination that Mr. Nguyen is significantly likely to be removed in the foreseeable future.  In particular, Respondents have not identified what concrete steps ICE has taken to process Mr. Nguyen's particular travel document."); Yan-Ling X. v. Lyons, No. 25-cv-01412, 2025 WL 3123793, at *4 (E.D. Cal. Nov. 7, 2025) (granting temporary injunctive relief because DHS's assertion that the petitioner's "case [was] under current review by the Government of China for the issuance of a travel document" was insufficient to meet their burden under 8 C.F.R. § 241.13(i)(2))

As of December 12, 2025, ICE had made no further progress in obtaining travel documents.  (Dkt. 12 (status report from Respondents' counsel).)  As of the date of the initial R&R, nearly another month had passed, and Respondents failed to provide any further updates, failed to respond to the Petition, and failed to appear for a status conference before the Magistrate Judge.

Moreover, Petitioner has submitted evidence that the state court conviction on which his removal order is based has now been vacated under state law, and that he has moved the BIA to reopen his immigration case on this ground.  If he is successful, his legal status may be restored.  See generally Bonilla v. Lynch, 840 F.3d 575, 589 (9th Cir. 2016) ("Generally, an alien's lawful permanent resident status ends upon entry of a final administrative order of deportation. … But if the BIA grants a motion to reopen, or a reviewing court holds that the BIA should have granted a motion to reopen, the final deportation order is vacated—that is, it is as if it never occurred. … The previously terminated immigration proceedings thus are reinstated, and the alien is restored to his prior status.").

Given Respondents' failure to explain what changed circumstances prompted them to revoke Petitioner's OSUP on October 23, 2025, their failure to show any progress in removing him in the more than two months that have passed

since then, and Petitioner's evidence that his removal order may be vacated, Respondents have failed to demonstrate that his removal is significantly likely in the reasonably foreseeable future under 8 C.F.R. § 241.13(i)(2).

## C. Petitioner is Entitled to Release from Custody and Reinstatement of His Prior OSUP.

"It is a well-known maxim that agencies must comply with their own regulations." United States v. Ramos, 623 F.3d 672, 683 (9th Cir. 2010). "Numerous district courts, including courts in the Ninth Circuit, 'have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered.'" Constantinovici v. Bondi, No. 25-cv-02405, 2025 WL 2898985, at *6, 2025 U.S. Dist. LEXIS 201394, at *15 (S.D. Cal. Oct. 10, 2025) (collecting cases).[5]  Because Respondents improperly revoked Petitioner's OSUP, that OSUP should be reinstated and he should be released.

//

//

//

---

[5] Some district courts have held that a noncitizen released on an OSUP acquires a liberty interest in his continued release, which is protected by the Due Process Clause and requires a pre-deprivation hearing before an immigration judge before they can be re-detained.  See, e.g., Momtazian v. Noem, No. 5:25-cv-03432-AH-KES, 2025 U.S. Dist. LEXIS 266022, at *6-8 (C.D. Cal. Dec. 25, 2025) (granting unopposed TRO); Viengkhone S. v. Albarran, No. 25-cv-01505, 2025 WL 3521302 at *7, 2025 U.S. Dist. LEXIS 253472, at *17-18 (E.D. Cal. Dec. 8, 2025) ("For nearly twenty years, [the government] allowed [the petitioner] to live at liberty in the United States, even though under an order of supervision.  Among other things, petitioner raised his two U.S. citizen children and worked. … The Court finds that petitioner has a protected liberty interest in his release."); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025) ("[I]ndividuals conditionally released from detention have a protected interest in their 'continued liberty.'").

13

**D.**    **Respondents' Objections to the Initial R&R.**

**1.**    **Whether the Court properly re-framed the argument as governed by 8 C.F.R. § 241.13(i) rather than Zadvydas.**

On January 16, 2026, Respondents timely filed objections to the initial R&R. (Dkt. 20.) They complain that by applying the standard set forth in 8 C.F.R. § 241.13(i), instead of Zadvydas, the undersigned considered an argument that was not raised in the Petition. (Dkt. 20 at 2.)[6] While it is true that the Petition did not cite this regulation, the regulation itself was promulgated to codify Zadvydas and create procedures to ensure compliance with it. See generally Bonitto v. Bureau of Immigr. & Customs Enf't, 547 F. Supp. 2d 747, 757 (S.D. Tex. 2008) ("In response to Zadvydas, the regulations governing post-removal-order detention were amended to comply with the Constitutional concerns illuminated in Zadvydas. The amended regulations, 8 C.F.R. §§ 241.13 and 241.4, reflect the concerns of the Zadvydas Court and provide necessary procedural safeguards to ensure the detention of an alien beyond the removal period comports with due process requirements.").

The main difference between the two standards, as discussed supra, is that the regulation places the burden on the government, rather than the noncitizen, to demonstrate that circumstances have changed to make the noncitizen's removal more likely before the government revoke's the noncitizen's OSUP. The main factual issues—what attempts the government has made to remove the noncitizen, what obstacles to removal remain, and whether removal is foreseeable—are the

---

[6] Respondents cite case law holding that preliminary injunctive relief may not be granted based on an argument not raised by the movant. (Dkt. 20 at 2 (citing Pac. Radiation Oncology, LLC v. Queen's Med. Ctr., 810 F.3d 631, 633 (9th Cir. 2015); Khamseh v. Langill, No. 25-cv-09955-MCS-DTB, Dkt. 14 at 4 n.4 (C.D. Cal. Nov. 6, 2025)). This case law is inapplicable here because the Court is considering the merits of the case rather than a request for preliminary injunctive relief.

same.

If the Court were to deny the Petition on the ground that <u>Zadvydas</u> is the wrong standard, such a denial would not preclude Petitioner from either amending the Petition or filing a new petition raising the regulatory argument.  Either procedure would simply create more delay in a case where the central claim is that Petitioner is being wrongfully detained indefinitely.  Respondents have already delayed resolution of this case by failing to respond to the Petition and failing to appear at a status conference.  (Dkt. 15, 16, 17.)  Moreover, Respondents have had an opportunity to consider and brief the regulatory standard in their objections to the initial R&R.  Those objections do not change the recommendation that Petitioner is entitled to relief, as discussed below.

**2.      Scope of Respondents' authority to revoke OSUPs.**

Respondents object that "the government has very broad authority to revoke supervised release that it has granted," citing case law discussing language from 8 C.F.R. § 241.4(*l*), which states that release can be revoked in "any other circumstance."  (Dkt. 20 at 3.)  However, "if a noncitizen is subject to 8 C.F.R. § 241.13, ICE may only detain them under *more limited circumstances* than 8 C.F.R. § 241.4(*l*)…."  <u>Hoang</u>, 2025 WL 3141857, at *3, 2025 U.S. Dist. LEXIS 212737, at *9 (emphasis added).  Section 241.13(i) authorizes DHS to revoke a noncitizen's OSUP and re-detain them if the noncitizen violates any of the conditions of release, 8 C.F.R. § 241.13(i)(1), or "if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future," 8 C.F.R. § 241.13(i)(2).

Notably, Respondents' objections make no attempt to argue that Petitioner is not subject to 8 C.F.R. § 213.13.

**3.      Whether DHS regulations establish substantive, enforceable rights.**

Respondents appear to argue that 8 C.F.R. § 213.13 does not create

substantive rights and/or that a violation of this regulation does not justify releasing Petitioner, citing, inter alia, Sanchez v. Bondi, No. 25-cv-02530-AB, 2025 WL 3190816, 2025 U.S. Dist. LEXIS 196639 (C.D. Cal. Oct. 3, 2025) (denying TRO).  (Dkt. 20 at 3-4.)  In Sanchez, with the benefit of more complete briefing in connection with Sanchez's subsequent request for a preliminary injunction, Judge Birotte actually reversed himself, reasoning:

> Petitioner has substantially supplemented his prior TRO arguments providing new authority and emphasizing regulatory requirements that were not previously cited. … In particular, Petitioner relies on several district court decisions recognizing that ICE's regulatory obligations under 8 C.F.R. § 241.13(i) are enforceable and binding.  See, e.g., Jane Doe 1 v. Nielsen, 357 F. Supp. 3d 972, 1000 (N.D. Cal. 2018); Delkash v. Noem, 2025 WL 2683988 (C.D. Cal. Aug. 28, 2025); Esmail v. Noem, 2025 WL 3030589 (C.D. Cal. Sept. 26, 2025); Constantinovici v. Bondi, ⸺ F.Supp.3d ⸺, 2025 WL 2898985 (S.D. Cal. Oct. 10, 2025); Medina v. Noem, 794 F.Supp.3d 365 (D. Md. 2025).

> The Court finds Esmail and Delkash particularly persuasive. … Both cases were decided within the last four months out of this district on materially similar facts and concluded that ICE must adhere to the procedural safeguards imposed by the regulations. … Petitioner also emphasizes that regulatory obligations, rather than the Immigration and Nationality Act ("INA") alone, govern the procedures for revocation of supervised release and notice to noncitizens. …

> These new arguments were not presented as thoroughly in the TRO Application, and Respondents have not meaningfully addressed them. … Given the supplementation with new authority directly on

point, the Court is persuaded that the regulations constitute binding legal requirements for ICE's revocation process. … While the Court previously held that statutory authority under the INA predominated, the Court now finds that ICE's compliance with the regulatory framework is a proper and enforceable basis for review.

Morales Sanchez v. Bondi, No. 25-cv-02530-AB-DTB, 2025 WL 3651899, at *3, 2025 U.S. Dist. LEXIS 262536, at *7-8 (C.D. Cal. Dec. 5, 2025) (granting preliminary injunction and ordering Sanchez's immediate release from custody).

**4.      Whether Petitioner's removal is foreseeable.**

Respondents' objections argue that the initial R&R "erred in finding that Petitioner has shown that there is no significant likelihood of removal in the reasonably foreseeable future[.]" (Dkt. 20 at 4.)  However, their objections provide no new facts to support this argument.  They argue only that ICE is not required "to pre-arrange a noncitizen's removal travel before arresting them," and the fact that "Petitioner does not yet have a specific date of anticipated removal does not make his detention definite." (Id. at 4-5.)  As discussed above, however, Respondents have repeatedly failed to (a) identify what circumstances have changed since Petitioner was released on an OSUP in 2013, or (b) explain what efforts they have undertaken to remove Petitioner to a third country, given that he cannot be removed to Bolivia, his country of origin.

//

//

//

//

//

//

//

//

17

## V.    RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Court issue an Order: (1) approving and accepting this R&R; (2) granting the Petition; (3) directing that Petitioner be immediately released from custody subject to the order of supervision that governed his release prior to his October 2025 detention; and (4) enjoining and restraining Respondents from re-detaining Petitioner unless and until they follow the procedures set forth in 8 C.F.R. §§ 241.4(*l*) and 241.13(i).

DATED:  January 20, 2026                    _____

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE